**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
HYPER ICE, INC., *et al.*,

                              Plaintiffs,                          **REPORT &**
                                                                  **RECOMMENDATION**
              -against-
                                                                  **25-CV-3643 (VSB) (JW)**
E HUNG TAT INTERNATIONAL GROUP
CO., LIMITED, *et al.*,

                              Defendants.
-----------------------------------------------------------------X
**To the Honorable Vernon S. Broderick, United States District Judge:**

Plaintiffs Hyper Ice, Inc. and Hyperice IP Subco, LLC (collectively, the "Plaintiffs") brings this infringement suit under the Patent Laws of the United States, *35 U.S.C §§ 271 et seq.* As authorized by a temporary restraining order issued by Judge Broderick, Plaintiffs served process on Defendants via email and FedEx. Defendants, who have since appeared, have now moved to dismiss Plaintiffs' complaint under Rule 12(b)(5) of the Federal Rules of Civil Procedure, claiming insufficient service of process. For the reasons that follow, the Court recommends that Defendants' motion to dismiss "the entire complaint against them with prejudice" pursuant to Rule 12(b)(5) be **DENIED**.

## BACKGROUND

### A. Factual background

#### a. Case background

Plaintiff Hyperice, Inc. is a corporation headquartered in Irvine, California, that owns two patents—U.S. patent Nos. 11,857,482 and 12,213,933 (collectively,

"Hyperice Patents")—which are at the center of this litigation.  Dkt. No. 13 ("Compl.") ¶ 5.  Plaintiff Hyperice IP Subco, LLC is a wholly owned subsidiary of Hyper Ice, Inc., and is an exclusive licensee that has been granted the express, irrevocable right to, *inter alia*, sublicense, enforce, and defend the Hyperice Patents.  Id. at ¶ 7.

Defendants E Hung Tat International Group Co., Limited d/b/a JQX-US ("E Hung Tat") and Defendant Jinyun Lige Technology Co., Ltd. d/b/a Jinyunligekeji ("Jinyun Lige") (collectively, the "Defendants") are China-based merchants on Amazon.  Id. at ¶ 8.  Plaintiff brings a patent infringement suit arising out of Defendants' use, offering, for sales, and/or sales in the United States, that allegedly infringe on Plaintiffs' Hyperice Patents.  See id. at ¶¶ 36–42 (First Cause of Action) and 43–49 (Second Cause of Action).  Plaintiffs allege they have suffered irreparable harm by Defendants' infringement, and that Defendants have "unjustly profited from such activities at Plaintiffs' expense."  Id. at ¶ 34.

### b. Plaintiffs' efforts to locate Defendants in connection with service

Plaintiffs' counsel attests, in a sworn declaration attached to their TRO application, to their efforts to locate Defendants in connection with service as follows:

Amazon, a global online marketplace and e-commerce platform, allows manufacturers and third-party merchants to advertise, distribute, offer for sale, sell, and ship their retail products to consumers in the United States.  Dkt. No. 22 ¶ 3. Many of the third-party merchants on Amazon, such as Defendants, "are located in China and have recently accounted for nearly half of all businesses on Amazon."  Id.

at ¶ 5. As evidenced by federal lawsuits against third-party merchants on Amazon, "an astronomical number of counterfeit and infringing products are offered for sale and sold on Amazon at a rampant rate." Id. at ¶ 8. And despite Amazon having a system in place to report intellectual property infringement, third-party merchants "frequently re-post their listing for such products" on Amazon once taken down under different seller names so they can continue selling the counterfeit or infringing products. Id. at ¶ 9.

Given Plaintiffs' counsel's experience in policing against infringement on Amazon, counsel avers that "sellers . . . like Defendants, often use evasive tactics, such as aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection." Id. at ¶ 10. Further, "based upon [their] research, and upon information and belief, foreign sellers rarely, if ever, provide registered business names or trade names, contact names, complete addresses or any other true and correct contact information on their Merchant Storefronts." Id. at ¶ 11.

The following addresses are listed on Defendants' Merchant Storefronts: Building 1, 6th Floor, No. 12 Tongchuan Road, Haotang Village, Zhiying Town, Yongkang City, Jinhua City, Zhejiang Province, China and Jinyun County, Lishui City, Zhejiang Province, Room 201, 2nd Floor, Building 2, No. 1, Hong Road, Xinbi Street, Lishui City, Zhejiang Province 321403 China. Id. at ¶ 19.

To investigate the accuracy of these addresses, Plaintiffs' counsel sent these addresses to their Beijing office for further investigation. Id. at ¶ 20.

3

The Beijing office used Baidu.com, a popular search engine in China, to attempt to locate and/or confirm the accuracy of Defendants' addresses. Id. ¶ 21. They also conducted a search of Defendants' merchant storefront names on a reputable Chinese company registration website called QiChaCha. Id. at ¶ 22. The Beijing office conducted a further search on the National Enterprise Credit Information Publicity System. Id. at ¶ 23.

For Defendant E Hung Tat, counsel attested that the "Beijing office determined that the address displayed on Defendants' Merchant Storefront for E Hung Tat is "false and/or outdated" since the company is registered as a Hong Kong entity. Id. at ¶ 24. Counsel located a different registered address from E Hung Tat's Amazon Storefront address associated with Defendant: Flat 1512, 15/F, Lucky Centre, No.165-171 Wan Chai Road, Wan Chai Hong Kong. Id. at ¶ 24.

Counsel did not attest any specific findings as to the accuracy of Defendant Jinyun Lige's address. For both Defendants, Plaintiffs' counsel attested that "the true identity, location, and contact information of Defendants. . . are unclear and virtually impossible for Plaintiffs to obtain independently." Id. at ¶ 25.

## B. Procedural background

### a. The Court authorizes service on Defendants by email

Plaintiffs filed suit on May 1, 2025. Compl. That same day, Plaintiffs filed an *ex parte* application for, *inter alia*, a temporary restraining order and an order authorizing bifurcated and alternative service on Defendants. The application was supported by the then-sealed complaint (Dkt. No. 13), a memorandum of law (Dkt.

No. 23, and two declarations with accompanying exhibits (Dkt. Nos. 21–22).  On May 22, 2025, Judge Broderick granted Plaintiffs' temporary restraining order and found that service on "Defendants using electronic means, website publication, and FedEx is reasonably calculated to result in proper notice to Defendants."  Dkt. No. 25 at 12 ("TRO").

### b.  Court grants alternative service for Defendant E Hung Tat

The TRO authorized Plaintiffs to serve Defendant E Hung Tat by alternative means pursuant to Rule 4(f)(d) of the Federal Rules of Civil Procedure.  In their TRO, Defendants asserted that based on their investigative efforts, they determined that the address displayed on E Hung Tat's Amazon merchant storefront was "false and/or outdated" since Defendants' counsel located a different registered address in Hong Kong rather than the Chinese address listed on E Hung Tat's Amazon storefront. Dkt. No. 22 ¶ 24.  "Based on the steps that Plaintiffs have taken to identify E Hung Tat's address," the Court found that E Hung Tat's address "is not 'known,' so the Hague Convention does not apply."  TRO at 6.  As such, the Court granted Plaintiffs' motion for alternative service as to E Hung Tat.  Id.

### c.  Court grants alternative service for Defendant Jinyun Lige

The Court also granted alternative service for Defendant Jinyun Lige under Rule 4(f)(3).  While the Court found that the Hague Convention applies because Plaintiff failed to establish that Jinyun Lige's address was "unknown," it also found that Plaintiffs met their burden of "demonstrating that the Hague Convention does not prohibit the proffered alternative service by email, online publication, and

FedEx." TRO at 10.  Judge Broderick acknowledged a circuit split on this issue, but followed the line of cases in the District that have allowed alternative service of TRO and preliminary-injunction orders by electronic means as to certain Chinese defendants based on the 'urgency' exception under Article 15 of the Hague Convention." Id. at ¶ 7–8 (collecting cases).  Because the Court found that Plaintiffs "demonstrated that it will face irreparable harm from Defendants' continuing trademark infringements," and Plaintiffs' counsel have made "numerous attempts to serve similar defendants unsuccessfully," the Court granted Plaintiff's motion for alternative service as to Jinyun Lige.  Id. at 8–9.

### d.  Email service on Defendants

The TRO authorized alternative service for both Defendants consisting of the following: (1) Delivery of the TRO order, the summons, complaint, and all supporting papers (collectively, the "TRO Application") via FedEx to Defendants' address Flat 1512, 15/F, Lucky Centre, No.165-171 Wan Chai Road, Wan Chai Hong Kong and (2) delivery of a PDF copy of the TRO Application and a link to a secure website created through Rmail.com, which provides a registered email service that confirms to its users when emails and their attachments have been sent, delivered to, and received by the email addresses.  TRO at 13.  Plaintiffs were required to send the TRO Application to Defendants' email addresses identified by Amazon pursuant to the TRO.  Id.  Pursuant to that order, Plaintiffs filed a certificate of service on all Defendants on June 26, 2025.

6

### e. Defendants' counsel appears and moves to dismiss for lack of proper service

On July 8, 2025, Defendants' counsel Qianwu Yang of California-based firm SHM Law Firm moved to appear *pro hac vice* before the Court.  Dkt. No. 8.  That same day, Defendants filed an opposition to Plaintiff's preliminary injunction (Dkt. No. 10) and a motion to dismiss for insufficient process pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure (Dkt. 9).  On July 28, 2025, Plaintiffs filed a memorandum of law in opposition to Defendants' motion to dismiss.  Dkt. No. 34.  On August 4, 2025, Defendants filed a reply in further support of their motion to dismiss.  Dkt. No. 35.  The Court considers the motion to dismiss fully briefed.

## LEGAL STANDARD

### A. Rule 12(b)(5)

Defendants seek to dismiss the case under Rule 12(b)(5) for insufficient service of process.   "Rule 12(b)(5) permits a party to move for dismissal of a complaint based on inadequate service of process."  George v. Pro. Disposables Int'l, Inc., No. 15 Civ. 3385 (RA), 221 F.Supp.3d 428, 432 (S.D.N.Y. 2016).  A "Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint."  Vega v. Hastens Beds, Inc., No. 21 Civ. 2732 (PGG) (SDA), 339 F.R.D. 210, 215 (S.D.N.Y. 2021).  Under such motion, "dismissal will be granted only when the defect is prejudicial to the defendant; . . . [o]therwise[,] the court will allow an amendment of the process to correct the defect."  Spin Master, Ltd. V. Aomore-US, No. 23 Civ. 7099 (DEH), 2024 WL 3030405, at *11 (S.D.N.Y. June 17, 2024).  "Once a defendant challenges the sufficiency of service of process, the burden

7

of proof is on the plaintiff to show the adequacy of service." Vantone Grp. Ltd. Liab. Co. v. Yangpu Ngt Indus. Co., No. 13 Civ. 7639 (LTS), 2016 WL 3926449, at \*2 (S.D.N.Y. July 15, 2016); accord Khan v. Khan, 360 F.App'x 202, 203 (2d Cir. 2010). "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[] to matters outside the complaint to determine whether it has jurisdiction." Cassano v. Altshuler, No. 15 Civ. 1186 (NSR), 186 F.Supp.3d 318, 320 (S.D.N.Y. 2016).

### B. Rule 4(f)

Rule 4(f), which governs service on defendants "in a foreign country," allows for service of process "by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention." Fed. R. Civ. P. 4(f)(1)). "Rule 4(f)(2)(A) provides that a party may effect service on an individual in a foreign country by a method reasonably calculated to give notice 'as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction.'" Ansell Healthcare, Inc. v. Maersk Line, No. 7 Civ. 7715 (VM), 545 F.Supp.2d 339, 342 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 4(f)(2)(A)). Further, Rule 4(f)(3) "permits a Court to order that service of a summons be made by other means, 'so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process.'" Vega, 339 F.R.D. at 217 (quoting Cunningham v. Gen. Motors LLC, No. 20 Civ. 3097 (AKH), 2020 WL 4748157, at \*1 (S.D.N.Y. Aug. 17, 2020)).

## DISCUSSION

In moving for dismissal under Rule 12(b)(5), Defendants argue that Plaintiffs' service, by the electronic means authorized in the TRO, was deficient because the Hague Convention governs this action and requires that Chinese Defendants be served at their physical addresses. Plaintiffs respond with two arguments. First, the Hague Convention does not apply to Defendant E Hung Tat, because Defendants' physical address was unknown to Plaintiffs despite reasonably diligent efforts to learn it, and service was therefore proper under Rule 4(f)(3). Dkt. No. 34 at 3. Second, even if the Hague Convention applied, it did not prohibit alternative service for both Defendants under the TRO, and hence was permissible under Rule 4(f)(3). Id. at 11–12.

For the reasons that follow, the Court finds that (1) the Hague Convention applies to both Defendants; (2) the Hague Convention did not prohibit the alternative service authorized under the TRO, and hence was permissible; and (3) assuming *arguendo* that service was improper under the Hague convention, Plaintiffs should be able to perfect service through Defendants' United States-based counsel.

### A. The Hague Convention applies to both Defendants

The Hague Convention, of which the United States and China are both signatories, seeks to "simplify, standardize, and generally improve the process of serving documents abroad." Water Splash, Inc. v. Menon, 581 U.S. 271 (2017). "[C]ompliance with the Convention is mandatory in all cases to which it applies." Smart Study Co. v. Acuteye-Us, No. 21 Civ. 5860 (GHW), 2022 WL 2872297, at *4

(S.D.N.Y. July 21, 2022) (citation omitted).  However, "[t]he Hague Convention does not apply where the address of the person to be served with the document is not known."  Id. at 5 (cleaned up).  "An address is not known [for the purposes of the Hague Convention] if the plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so."  Id.  What constitutes "reasonable diligence" is a fact-specific inquiry, and "[c]ourts in this District have consistently held that multiple modes of attempted contact typically are required."  Kyjen Co. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A to the Compl., No. 23 Civ. 612 (JHR) (SN), 2023 WL 2330429, at *3 (S.D.N.Y. Mar. 2, 2023); see also Kelly Toys Holdings, LLC v. Top Dep't Store, No. 22 Civ. 558 (PAE), 2022 WL 3701216, at *7 (S.D.N.Y. Aug. 26, 2022) (finding that the plaintiff exercised reasonable diligence through "extensive and multi-dimensional efforts[,]" including dispatching local counsel to determine whether physical addresses were associated with defendants).

The Court does not find that Plaintiffs exercised reasonable diligence in investigating the accuracy of either Defendants' physical addresses.  While Defendants attested that they used various company registration websites, such as Baidu.com and QiChaCha, to verify the accuracy of Defendants' Amazon Storefront addresses (see Dkt. No. 23), Plaintiffs did not explain the basis for that assessment, or what steps, if any, Plaintiff took to confirm the appearance that the address was false or outdated.  The only specific assertions made as to Defendant E Hang Tat was that the Chinese address displayed on their Amazon storefront "is false and/or

outdated since the company is registered as a Hong Kong entity" and was associated with a different registered Hong Kong address.  Dkt. No. 23 ¶ 24.  Plaintiffs' counsel made no specific assertions as to Defendant Jinyun Lige.

As such, there is nothing in the record indicating that Plaintiff took any additional steps to confirm whether the address was "false and/or outdated," such as attempting to send mail to Defendants' Amazon Storefront address, visiting the physical address to confirm accuracy, or other measures that courts have found sufficient to demonstrate reasonable diligence.  See, e.g., Cawthon v. Yaoyage, No. 22 Civ. 7279 (JHR) (RFT), 2024 WL 95055, at *2 (S.D.N.Y. Jan. 9, 2024) (finding no reasonable diligence where the plaintiff failed to dispatch a private investigator to conduct in-person visits or contact Defendant's local counsel); See Safavieh Intl., LLC v. Chengdu Junsen Fengrui Tech. Co.-Tao Shen, No. 23 Civ. 3960 (CM), 2023 WL 3977505, at *6 (S.D.N.Y. June 13, 2023) (finding the plaintiff did not exercise reasonable diligence because "[t]here [was] no evidence in the record that suggest[ed] Plaintiff [took] any steps to confirm or deny whether the physical address provided [wa]s appropriate for service"); but see Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen, No. 14 Civ. 1112 (VSB), 2018 WL 4757939, at *4 (S.D.N.Y. Sept. 30, 2018) (finding reasonable diligence where plaintiff's investigators researched defendant's websites associated with defendant's domain names, "completed multiple Internet-based searches, called known phone numbers, and conducted in-person visits where reasonable").

11

Plaintiffs do not provide any authority supporting the proposition that merely performing online research, with no specific explanation of what was done to verify Defendants' addresses, constitutes reasonable diligence. For their part, Defendants have represented that the address information provided on Amazon's website for both E Hung Tat and Junyun Lige was correct from the start. See Dkt. No. 9 at 3. Plaintiffs may have uncovered this themselves (or could have developed a record sufficient to contest that representation) had it exercised reasonably diligent efforts to discover Defendants' addresses. Thus, there is insufficient evidence for the Court to conclude that Defendants' addresses are "not known" for the purposes of the Hague Convention.

The Court turns next to whether alternative service on Defendants in this case was proper.

### B. <u>Alternative service by email is permitted</u>

As discussed in the TRO, while there is a Circuit split on whether service by email on Chinese defendants is permitted by the Hague convention, the undersigned joins the "several courts in this District [that] have allowed alternative service of TRO and preliminary-injunction orders by electronic means as to certain Chinese defendants based on the 'urgency' exception under Article 15 of the Hague Convention." TRO at 7.

Consistent with the TRO, this Court finds that Plaintiffs have sufficiently demonstrated "urgency" contemplated by Article 15 of the Hague Convention. Defendants argue that there was no urgency here because Plaintiffs knew about the

alleged infringement for at least nine months before they decided to sue, negating a finding of irreparable harm.  Dkt. No. 9 at 9.  Plaintiffs counter that they "had no choice but to sue Defendants and move for a temporary restraining order due to Defendants' blatant disregard for Plaintiffs' intellectual property rights" despite giving Defendants opportunities to remove their Infringing Products without judicial intervention.  Dkt. No. 34.  Id. at 9.  While Plaintiffs did not act as promptly as it could have, the delay here, under the circumstances, does not rebut the presumption of irreparable harm.  As such, "Plaintiff's counsel, based on their efforts here and experience in other similar cases, have made numerous attempts to serve similar defendants unsuccessfully, demonstrating the 'urgency' contemplated by Article 15 of the Hague Convention."  TRO at 9.

## C. **Assuming *arguendo* service is not proper under Rule 4(f), Plaintiff can serve Defendants through their U.S. based counsel**

Even assuming service was insufficient under Rule 4(f), "there is little practical effect of the motion to dismiss for insufficient service of process."  Moonbug Entertainment Ltd. v. Autumn Sell, No. 21 Civ. 10328 (NRB), 2023 WL 2051247, at *5 (S.D.N.Y. Feb. 16, 2023).  Upon a finding of insufficient service, the Court may dismiss the case or may, in its discretion, retain the case, quash service, and direct that service be effectuated properly."  Vega, 339 F.R.D. at 217; see also Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs., No. 90 Civ. 7623 (GLG), 775 F.Supp. 133, 138 n.2 (S.D.N.Y. 1991) ("[D]ismissal is not mandatory when service of process is improper.  [Rather,] Rule 12(b)(5) . . . offer[s] the court a course of action other than

simply dismissing the case when defendant's defense . . . is sustained."). Courts are particularly inclined to preserve an action where "there is a reasonable prospect that plaintiff will ultimately be able to serve the defendant properly." Unite Nat'l Ret. Fund v. Ariela, Inc., No. 06 Civ. 0055 (BSJ), 643 F.Supp.2d 328, 334 (S.D.N.Y. 2008); see also Aries Ventures Ltd. v. Axa Fin. S.A., No. 86 Civ. 4442 (WCC), 729 F.Supp. 289, 303 (S.D.N.Y. 1990) (declining to dismiss for lack of proper service where defendant "clearly had actual notice of the present action").

Courts can order service onto domestic counsel under Rule 4(f)(3) if they find that "service on the United States counsel is 'reasonably calculated, under all of the circumstances'" to notify defendants of the action. United States v. Mrvic, 21 Civ. 8792 (JLR), 652 F.Supp.3d 409, 412 (S.D.N.Y. 2023) (citations omitted). "Courts in this district have generally held that service on a defendant located abroad via U.S.-based counsel is permitted under the text of Rule 4(f)(3)." Id.

Here, represented Defendants' United States counsel have appeared before the Court and filed several briefs, including the instant motion to dismiss and an opposition brief to Plaintiffs' motion for preliminary injunction. See Dkt. Nos. 9–10; see Spin Master, Ltd., 2024 WL 3030405, at *12 (declining to dismiss for lack of proper service where defendants "appeared before the court and fully briefed several motions). There is thus a "reasonable prospect that plaintiff will ultimately be able to serve the defendant properly," in compliance with international law. Unite Nat'l Ret. Fund, 643 F.Supp.2d at 334. Defendants failed to provide any case law stating otherwise, or address whether any prejudice would justify precluding Plaintiff from

perfecting service.  As such, even assuming *arguendo* that service was improper Rule 4(f), the Court is within its discretion to decline to dismiss the case and order Plaintiffs to serve Defendants' United States counsel instead.

## CONCLUSION

For the foregoing reasons, the Court recommends that Defendants' motion to dismiss pursuant to Rule 12(b)(5) be **DISMISSED**.

## RECOMMENDATION FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Such objections, and any responses to objections shall be filed with the Clerk of Court and on ECF.  Any requests for an extension of time for filing objections must be directed to Judge Broderick.  **Failure to file objections within fourteen days will result in a waiver of objections and will preclude appellate review**.  See Thomas v. Arn, 474 U.S. 140 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

SO ORDERED.

DATED:     New York, New York
           December 15, 2025

_Jennifer E. Willis_
JENNIFER E. WILLIS
United States Magistrate Judge

15